J-S59030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: T.N.M.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.R., MOTHER | No. 3628 EDA 2015 |

Appeal from the Decree entered October 30, 2015,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): 51-FN-00001184-2014, CP-51-AP-0000700-2015

| | |
|---|---|
| IN THE INTEREST OF: R.J.C.R., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.R., MOTHER | No. 3630 EDA 2015 |

Appeal from the Decree entered October 30, 2015,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): 51-FN-00001184-2014, CP-51-AP-0000701-2015

BEFORE:  BENDER, P.J.E., OLSON, and FITZGERALD*, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 04, 2016**

T.R. ("Mother") appeals from the decrees dated and entered on October 30, 2015, granting the petitions filed by the Philadelphia County Department of Human Services ("DHS" or the "Agency") to involuntarily terminate her parental rights to her dependent children, T.N.M.R., a female born in January of 2013, and R.J.C.R., Jr., a male born in November of 2006

_____

* Former Justice specially assigned to the Superior Court.

(collectively, "the Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1] We affirm.

The trial court set forth the relevant history of this case in its Opinion. *See* Trial Court Opinion, 2/22/16, at 1-2 (unpaginated). We adopt the trial court's recitation for purposes of this appeal. *See id*.

On October 14, 2015, DHS filed petitions to terminate Mother's parental rights to the Children. At the hearing on October 30, 2015, DHS presented the testimony of its caseworkers, Markey Woodard and Monica Burton. Mother presented the testimony of her medical case manager, Margaret Pelleriti. Mother also testified on her own behalf.

On October 30, 2015, the trial court entered the termination decrees. On November 30, 2015, Mother timely filed notices of appeal along with concise statements of error complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[2]

In her brief on appeal, Mother raises six questions for this Court's review, as follows:

---

[1] Neither A.W., the natural father of T.N.M.R., nor R.C., the natural father of R.J.C.R., Jr., filed a brief or participated in Mother's appeals. The trial court had not terminated either of the father's parental rights at the time that the record in this case was certified.

[2] The briefing schedule in this case was delayed by one and one-half months because of an overdue record and by more than two months because of extensions requested by Mother's appointed counsel. Upon receipt of the certified record and appellate briefs from both of the parties, the Superior Court acted diligently in securing a prompt disposal of this appeal.

A. [Whether the t]rial [c]ourt [abused] its discretion and committed legal error in terminating [M]other's parental rights, since the [DHS] did not meet its burden by clear and convincing evidence of establishing sufficient grounds that [M]other evidenced a settled purpose of relinquishing a claim to [the C]hildren or has refused or failed to perform parental duties under 23 Pa.C.S.A. § 2511(a)(1)[?]

B. [Whether the t]rial [c]ourt [abused] its discretion and committed legal error in terminating [M]other's parental rights, since the [DHS] did not meet its burden by clear and convincing evidence of establishing sufficient grounds under 23 Pa.C.S.A. § 2511(a)(2) that [M]other lacks the present capacity to perform her parental responsibilities?]

C. [Whether the t]rial [c]ourt [abused] its discretion and committed legal error in terminating [M]other's parental rights under 23 Pa.C.S.A. § 2511(a)(5), because the [DHS] failed to prove by clear and convincing evidence the present and continued incapacity of [M]other to provide essential care necessary for [the C]hildren's physical and mental well[-]being[?]

D. [Whether the t]rial [c]ourt [abused] its discretion and committed legal error in terminating [M]other's parental rights under 23 Pa.C.S.A. § 2511(a)(8), because the [DHS] failed to prove by clear and convincing evidence that the conditions which led to both [C]hildren's placement continue to exist[?]

E. [Whether the t]rial [c]ourt [erred] in terminating [M]other's parental rights since the [DHS] did not meet its burden by clear and convincing evidence of showing that the best interest of the [C]hildren was served by terminating [M]other's parental rights pursuant to section 2511(b) of the Adoption Act[?]

F. [Whether the t]rial [c]ourt abused its discretion and committed legal error in terminating [M]other's parental rights under 23 Pa.C.S.A. § 2511(b), because the [DHS] did not present competent evidence regarding the nature of the bond between parent and children in evaluating the best interests of the [C]hildren[?]

- 3 -

J-S59030-16

Mother's Brief at 3-4 (unpaginated; with grammatical revisions).[3]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold

---

[3] The trial court stated that, in addition to terminating Mother's parental rights, it changed the permanency goal for the Children to adoption under the Juvenile Act, 42 Pa.C.S.A. § 6351. *See* Trial Court Opinion, 2/22/16, at 2, 6 (unpaginated). Both termination decrees provided that the adoption of the child may continue without further notice or consent of Mother. We note that dependency matters are with regard to the child lacking proper parental care and control as to both parents. *See In re J.C.*, 5 A.3d 284, 289 (Pa. Super. 2010). In any event, Mother failed to challenge the goal change, and, thus, waived any challenge to that determination. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the Statement of Questions Involved in his or her brief on appeal).

- 4 -

record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (*quoting* ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court terminated Mother's parental rights under section 2511(a)(1), (2), (5), (8), and (b). ***See*** Trial Court Opinion, at 2/22/16, at 2 (unpaginated). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en*

*banc*). We will focus on section 2511(a)(1) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> * * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

In **In re Z.S.W.**, 946 A.2d 726 (Pa. Super. 2008), this Court stated:

[t]o satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. **In re Adoption of R.J.S.**, 901 A.3d 502, 510 (Pa. Super. 2006). In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing

- 6 -

parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998).

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Id.* at 92 (citation omitted).

*In re Z.S.W.*, 946 A.2d at 730 (parallel citations omitted).

The trial court found the following based upon the testimony of Ms. Woodard and Ms. Burton.

In the instant case, Mother did not fully complete her Family Service Plan (FSP) goals. Ms. Woodard, the original DHS social worker, identified the mother's FSP objectives as: 1) attend parenting and anger management classes, 2) maintain visits with the [C]hildren, 3) obtain suitable housing, 4) attend the [C]hildren's medical appointments, and 5) complete mental health treatment. (N.T., 10-30-15, p. 15). Ms. Burton, the current DHS social worker[,] was never able to confirm whether or not Mother [] obtained appropriate housing because Mother never allowed her access to her home. (N.T., 10-30-15, pgs. 37 and 46). The social workers testified that because Mother denied them access, they were unable to ascertain whether her paramour was living in the home. Mother's paramour was not permitted to be in the home with the [C]hildren because he was a sexual offender. (N.T., 10-30-15, pgs. 22-23 and 38). Furthermore, Mother did not attend the [C]hildren's medical appointments. (N.T., 10-30-15, pg. 41). Moreover, Mother did

- 7 -

not complete her mental health treatment. (N.T., 10-31-15, pg. 49). Mother NEVER provided DHS with documentation that she was attending treatment for mental health. (N.T., 10-30-15, pgs. 49 and 57).

Trial Court Opinion, 2/22/16, at 3 (unpaginated) (emphasis in original).

On direct examination, Mother testified that she completed a 16-week parenting class at Achieving Reunification Center ("ARC") on October 22, 2015, and began the class in July of 2015. N.T., 10/30/15, at 68-69. Mother testified that no DHS employee came to evaluate the home where she had been living since November of 2014. *Id.* at 69-70. Further, Mother testified that she was receiving mental health treatment at COMHAR, and met weekly with a psychotherapist for mental health treatment. *Id.* at 71.[4] Mother stated that she left voicemail messages with DHS caseworker Monica Burton on ten occasions to inform DHS about her parenting classes and anger management classes, and her mental health treatment at COMHAR. *Id.* at 73. Mother also stated that she receives psychiatric treatment once monthly, and receives medication for depression and bipolar conditions. *Id.* at 74-75. Mother explained that her failure to visit the Children was because she had heart failure and could not walk far prior to surgery, but that she was currently under treatment for the heart condition. *Id.* at 76-77. Finally, Mother stated that R.J.C.R., Jr., would like to return home with her

---

[4] The notes of testimony erroneously refer to this agency as COHMAR. *See* N.T., 10/30/15, at 71.

when he sees her at visits, but T.N.M.R. is too young to understand returning home with Mother. *Id.* at 77.

On cross-examination by the child advocate, Mother testified that her health, specifically her heart condition, prevented her from addressing the matters necessary for reunification with the Children. N.T., 10/30/15, at 79-80. She blamed DHS for failing to inform her that she needed to bring documentation to the hearing to support her claim that she could not attend the visits because of her health. *Id.* Mother brought documentation to the hearing indicating that she began treatment with a psychiatrist at COMHAR on September 8, 2015. *Id.* at 80. While Mother stated that she saw another psychiatrist prior to September of 2015, she failed to bring to the hearing any documentation that would prove her claim. *Id.* at 81. Additionally, Mother blamed the failure of DHS to evaluate her home on the failure of the DHS caseworker to respond to Mother's voicemails. *Id.* at 83-85.

> At the conclusion of the hearing, the trial court stated as follows:
>
> [THE COURT]: Even though [Mother] completed some of her Family Service Plan objectives within the last six months, for the balance of the case[,] [Mother] failed to visit[,] in the beginning of the case. The housing issue has always been an issue[,] and it's still an issue. The mental health, [Mother's] own document which she submitted[,] which I accepted[,] indicates that she started mental health [treatment] a month ago. She testified that she started it six months ago. I don't find that to be credible. Her own document says a month ago. So mental health continues to be an issue.

I cannot – we need permanency for these children. The timeline doesn't stop. So theoretically for [Mother] to successfully complete it we'd have to wait another four to five months for her to complete her mental health. So based upon the totality of the circumstances –

[MOTHER]: But, Judge, I did it.

[THE COURT]: That is why [--] that is my rationale for the decision. I do find that Ms. Woodard and Ms. Burton testified credibly.

N.T., 10/30/15, at 93.

With regard to section 2511(a)(1), the trial court found the following

from the testimony at the hearing.

It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, [M]other failed to perform parental duties for the [C]hildren. The court found by clear and convincing evidence that [M]other refused or failed to perform her parental duties.

* * *

In the instant matter, the [C]hildren, T.N.M.R. and R.J.C.R., have been in placement care for approximately seventeen months. Mother was inconsistent with her visitation with the [C]hildren. (N.T., 10-30-15, p. 19). Furthermore, Mother had supervised visitation with the [C]hildren and she never progressed to unsupervised visitation. (N.T., 10-30-15, pgs. 18 and 49). Moreover, the DHS social worker testified that Mother has no involvement with R.J.C.R.'s autism services, mental health therapy or school. (N.T., 10-30-15, p. 41). The testimony established that the [C]hildren are in a safe environment[,] and termination of the mother's parental rights is in the best interest of the child. (N.T., 10-30-15, pgs. [25-26] and 40).

Trial Court Opinion, 2/22/16, at 3-4 (unpaginated).

The trial court carefully reviewed the testimony and the evidence presented by the parties, and found that Mother failed to perform her parental duties for the six months prior to the filing of the termination petition. The trial court rejected, as lacking credibility, Mother's reasons for her abandonment of the Children and her explanation for her lack of contact with the Children, specifically, her medical and mental health issues, her treatment for those conditions, and the fact that she was living in a separate household from the Children. **See** Mother's Brief, at 10 (unpaginated); Trial Court Opinion, 2/22/16, at 6 (unpaginated).

We find that competent evidence of record supports the trial court order concluding that, for a period of at least six months prior to the filing of the petition, Mother engaged in conduct evidencing a settled purpose of relinquishing her parental rights to the Children under section 2511(a)(1). The trial court did not commit an abuse of discretion or an error of law. **See In re Adoption of S.P.**, 616 Pa. at 325-26, 47 A.3d at 826-27.

Next, this Court has explained that the focus in terminating parental rights under section 2511(a) is on the parent, but, under section 2511(b), the focus is on the child. **In re Adoption of C.L.G.**, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). Pursuant to section 2511(b), we must consider whether the termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. **See In re C.M.S.**, 884 A.2d 1284, 1286-1287 (Pa. Super. 2005). "Intangibles

such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The trial court must also discern the nature and status of the parent-child bond in the case, with utmost attention to the effect of permanently severing that bond on the child. *See id.*

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d at 1121 (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

Based upon evidence within the certified record, the trial court found that there is no bond between Mother and the Children, as the Children had no difficulty separating from Mother at the end of visits, and there was no irreparable harm to the Children when Mother missed visits. Trial Court Opinion, 2/22/16, at 5 (unpaginated) (citing N.T., 10/30/15, at 20, 51). *See also* Trial Court Opinion, 2/22/16, at 5 (unpaginated). The trial court stated:

> Furthermore, the [C]hildren look to the foster parents for love[,] safety, stability and support. The testimony of the social worker

indicated that [n]They have a strong bond with each other." (N.T. 10-30-15, p. 25-26). The current social worker testified that the [C]hildren receive the love and care they need from the foster parents, "you can tell they are bonded with them." They have a parent-child relationship. (N.T., 10-30-15, pgs. 40-41). The social workers testified that termination of [M]other's parental rights would be in the best interest of the [C]hildren and that termination would cause no significant or irreparable harm to the [C]hildren. (N.T., 10-30-15, pgs. 25 and 40).

The t]rial [c]ourt found by clear and convincing evidence that the Department of Human Services met [its] statutory burden pursuant to 23 Pa.C.S.A. §§ 2511(a) & (b) and that it was in the best interest of the [C]hildren to change the goal to adoption. (N.T., 10-30-15, pgs. 91-92).

Lastly, in the instant matter, the [trial court] found that DHS social workers testified credibly.

* * *

Furthermore, the [trial] court finds that its ruling will not cause R.J.C.R. and T.N.M.R. to suffer irreparable harm and it is in the best interest of the [C]hildren as [a] result of testimony regarding the [C]hildren's safety, protection, mental, physical and moral welfare to terminate [M]other's parental rights.

Trial Court Opinion, 2/22/16, at 5-6.

As we stated in *In re Z.P.*, 994 A.2d 1108 (Pa. Super. 2010), a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. We emphasized, "[p]arental rights are not preserved by waiting for a more convenient time to perform one's parental responsibilities while others provide the child with [the] child's physical and emotional needs." *Id.* at 1119 (quoting *In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (emphasis in original)). Rather, "a parent's basic constitutional right to the

- 13 -

custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856. *See In re: T.S.M.*, 620 Pa. 602, 628-629, 71 A.3d 251, 267 (Pa. 2013).

Again, we find that the competent, clear and convincing evidence in the record supports the trial court's conclusion that the termination of Mother's parental rights would best serve the Children's needs and welfare, and would provide the Children with the permanency and stability that they need in their life. The court's conclusion is not the result of an error of law or an abuse of discretion. Accordingly, we affirm the trial court's decision with regard to subsection (b). *In re Adoption of S.P.*, 616 Pa. at 325-26, 47 A.3d at 826-27.

Decrees affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2016

- 14 -