J-S13045-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: J.D., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.D., BIOLOGICAL | : | |
| FATHER | : | No. 1817 WDA 2017 |

Appeal from the Order Entered November 20, 2017
in the Court of Common Pleas of Somerset County,
Orphans' Court at No(s):   56-DP-0000051-2017

BEFORE:   GANTMAN, P.J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                         FILED MAY 25, 2018

K.D. ("Father") appeals from the Order (hereinafter, the "Dependency

Order") adjudicating his minor son, J.D. ("Child" – born in December 2016), a

dependent child under the Juvenile Act, see 42 Pa.C.S.A. § 6301 et seq.

(hereinafter, "the Act"), and the Order finding that aggravated circumstances

exist against Father (hereinafter, the "Aggravated Circumstances Order").[1]

We affirm.

The Orphans' Court set forth the factual background and procedural

history of this appeal as follows:

> [Somerset County Children and Youth Services ("CYS" or the
> "Agency")] became involved with [Child] as the result of a referral
> received [in] December [], 2016, which ... is the [month in which
> Child] was born, alleging that he was "showing signs of withdrawal
> of illegal drugs."  During the spring and early summer [of 2017],
> while Father [was] incarcerated and [] [C]hild was being raised by
> [his biological Mother, A.P. (hereinafter, "Mother")], CYS received

_____

[1] On November 20, 2017, the Orphans' Court entered an Amended Order,
amending the Dependency Order and the Aggravated Circumstances Order,
from which Father timely filed a single Notice of Appeal.

several referrals alleging that Mother was using illegal drugs, which was verified by a drug screen administered [on] May 13, 201[7,] showing positive results for benzodiazepines and marijuana. Throughout this period, Father remained incarcerated until August 9, 201[7]. Following his release from jail, CYS attempted to conduct home visits with Father numerous times, but was [only] successful in visiting with Father once in September [2017,] and once in October [2017,] despite numerous attempts to contact him. According to the record, numerous attempts to contact Father, including phone calls and visits to his home[,] were unsuccessful. When Father did call [the CYS caseworker] back, the caseworker was unable to reach [Father] in response.

In addition, the [c]aseworker reported that she had one return phone call from [Father,] seeking to have [Child] placed with him[,] between the time that the [voluntary] safety [p]lan was put in place in July [2017,²] until the date of the hearing[] [in November 2017]. The caseworker also reported that[,] although she [had] attempted to contact Father by telephone, [] when she would leave a message for him to call [her back], if he did return the call and left a message, her attempts to regain contact with him were unsuccessful. The [c]aseworker also testified that her attempts to contact Father and get a drug screen from him were unsuccessful[,] until October 2, 201[7]. On that date, she was finally able to review the [Family] Service Plan [("FSP")] with Father. In addition, despite the fact that both Mother and Father have a prior history of illegal drug use, neither party has undergone any treatment to the knowledge of CYS.

\* \* \*

[T]he [FSP] required that Father receive a drug and alcohol evaluation after he was released from incarceration and that, except for one occasion when he was tested with negative results, the Agency was unable to contact Father[,] and Father made no attempt to contact the Agency on his own to complete any additional drug and alcohol evaluations[,] as required by the [FSP]. Further, ... the reason [that CYS had asked] Father ... to undergo drug and alcohol treatment was based upon his prior usage of illegal drugs. ... [T]here is nothing in th[e] record ...

_____

² Under the safety plan, neither parent was to have unsupervised contact with Child, and Child was temporarily placed with a relative.

[showing] that Father made any significant effort to comply with the [FSP], particularly on the issue of the drug testing.

Orphans' Court Opinion, 12/22/17, at 2-3 (footnote added, citations to record omitted). Additionally, the parental rights of both Father and Mother had previously been involuntarily terminated relative to three other children, within three years of Child's birth, in March 2015. Id. at 1-2; see also N.T., 11/2/17, at 24.

On August 30, 2017, CYS filed a dependency Petition alleging that Child met the definition of a "dependent child" under two subsections of the Act, see 42 Pa.C.S.A. § 6302(1) and (10). One day later, the Orphans' Court appointed Tiffany Stanley, Esquire (hereinafter, the "GAL"), as guardian ad litem for Child. Additionally, CYS filed a Petition seeking a finding of aggravated circumstances against Mother and Father (hereinafter, the "aggravated circumstances Petition"), under section 6302(5) of the Act, based on the March 2015 involuntary terminations concerning their three other children.

On November 2, 2017, the Orphans' Court held a hearing (hereinafter "the dependency hearing") on the dependency Petition and the aggravated circumstances Petition (collectively "the Petitions"). At the dependency hearing, Mother appeared with her counsel, as did Father. The GAL appeared on behalf of Child. The Agency presented the testimony of its caseworkers, Amanda Robinette ("Caseworker Robinette") and Jennifer Custer ("Caseworker Custer").

On November 15, 2017, the Orphans' Court entered Amended Orders granting the Petitions,[3] adjudicating Child dependent under subsections 6302(1) and (10), and finding aggravated circumstances exist against Father and Mother under section 6302(5).[4]

On November 30, 2017, Father timely filed a Notice of appeal from the Dependency Order and the Aggravated Circumstances Order, simultaneously with a Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(1) and (b).[5]

Father now presents the following issues for our review:

1. Did the [Orphans'] Court err by adjudicating [] [C]hild [dependent] under 42 Pa.C.S.A. [§] 6302 "Dependent Child" definition (1), as the Agency failed to present clear and convincing evidence with respect to lack of proper parental care and control, on the part of [] Father?

2. Did the [Orphans'] Court err by adjudicating [] [C]hild [dependent] under 42 Pa.C.S.A. [§] 6302 "Dependent Child" definition (10), as the Agency failed to present clear and convincing evidence that conduct on the part of [] Father posed a risk to the health, safety, and welfare of [] [C]hild?

_____

[3] On November 20, 2017, the Orphans' Court amended the Orders granting the Petitions, in order to reflect its finding that the Agency had made reasonable efforts to prevent or eliminate the need for the removal of Child from the parent(s) home(s). This Order also states that, in all other respects, the prior Orders remain in full force and effect.

[4] The Orphans' Court additionally ordered the removal of Child from the home of Mother and/or Father, and that Child be placed in foster care. Further, the Orphans' Court ordered Child's permanency placement goal as return to parent or guardian, with a concurrent goal of adoption.

[5] Mother did not file an appeal from the Dependency Order and/or the Aggravated Circumstances Order.

3. Did the [Orphans'] Court err by failing to set forth findings of fact on the record in this case ...?

4. Did the [Orphans' Court] err by granting the Agency's Motion for Aggravated Circumstances, based upon the fact that there should not have been an adjudication of dependency, and therefore[,] a finding of aggravated circumstances should not have been possible?

Father's Brief at 3-4.[6]  As Father's claims are related, we will address them together.  See id. at 12 (asserting that "[a]ll four issues ... essentially amount to one issue ....").

In his first and second issues, Father asserts that the Orphans' Court incorrectly determined that Child was a "dependent child" under subsections 6302(1) and (10), arguing that the Agency failed to support its dependency Petition with sufficient evidence to meet either subsection.  See id. at 12-20. Father argues that "the Agency failed to present any evidence whatsoever to indicate that ... the conduct of [Father] posed a risk to the health, safety, and welfare of [] [C]hild."  Id. at 13.  Father further maintains that "there was

_____

[6] Father raises an additional issue in the Argument section of his brief, namely, that the Orphans' Court erroneously admitted hearsay statements concerning anonymous referrals made to caseworkers who were not present at the dependency hearing.  See Father's Brief at 16-17.  However, he waived this claim for his failure to raise it in his Rule 1925 Concise Statement and in the Statement of Questions Involved section of his brief.  See Krebs v. United Ref. Co., 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved section of his or her brief on appeal); see also Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

simply no evidence to suggest that [he] could not have parented if the Agency … [had] allowed him to do so." Id. at 14.

In his third issue, Father contends that the Orphans' Court erred by failing to set forth findings of fact on the record to support its Dependency Order. See id. at 20-22; see also id. at 20-21 (asserting that "[a]s the trial court did not make specific findings of fact, it is not clear what the trial court [had] specifically determined [that] [] Father had 'done wrong.'").

In his fourth issue, Father argues that, since the Orphans' Court erred in adjudicating Child dependent, it therefore also erred in finding aggravating circumstances exist in this matter. See id. at 22-23.

> Our standard of review in a dependency case is as follows:
>
> The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the [Orphans'] court if they are supported by the record, but does not require the appellate court to accept the [Orphans'] court's inferences or conclusions of law. We review for abuse of discretion[.]

In Interest of: L.Z., A Minor Child, 111 A.3d 1164, 1174 (Pa. 2015) (citation and quotation marks omitted).

The definitions provision of the Act, section 6302, defines a "dependent child," in relevant part, as a child who

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

* * *

(10) is born to a parent whose parental rights with regard to another child have been involuntarily terminated under 23 Pa.C.S. § 2511 (relating to grounds for involuntary termination) within three years immediately preceding the date of birth of the child[,] and conduct of the parent poses a risk to the health, safety or welfare of the child.

42 Pa.C.S.A. § 6302(1), (10).

This Court has clarified the definition of "dependent child" further:

The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

In re G., T., 845 A.2d 870, 872 (Pa. Super. 2004) (quotation marks and citations omitted); see also In re J.C., 5 A.3d 284, 289 (Pa. Super. 2010).

[A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

In re D.A., 801 A.2d 614, 617 (Pa. Super. 2002) (en banc). Regarding the disposition of a dependent child, 42 Pa.C.S.A. § 6351(e), (f), (f.1), and (g) provide an Orphans' Court with the criteria for its permanency plan for the subject child.

Further, the Act defines "aggravated circumstances" as including the following: "The parental rights of the parent have been involuntarily terminated with respect to a child of the parent." 42 Pa.C.S.A. § 6302(5).

> If the court finds[,] from clear and convincing evidence[,] that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home[,] or to preserve and reunify the family[,] shall be made or continue to be made[,] and schedule a hearing as required in section 6351(e)(3) (relating to disposition of dependent child).

42 Pa.C.S.A. § 6341(c.1).

After a careful review of the record, we find competent, clear and convincing evidence to support the Orphans' Court's determination that Child is a "dependent child" under subsections 6302(1) and (10). Both Mother and Father have a history of drug abuse, and Child showed signs of withdrawal from drugs immediately after his birth. See N.T., 11/2/17, at 7, 42-43. Father was incarcerated at the time that Child was born. Id. at 14. After Father was released from jail in early August 2017, the Agency could not locate him to participate in the voluntary safety plan, despite making efforts to locate him, until after September 2017. See N.T., 11/2/17, at 14, 18-19, 22-23, 34-35. One of the goals of the FSP was for Father to undergo a drug and alcohol evaluation; however, Father never completed an evaluation. Id. at 21, 59. The Agency was unable to conduct an assessment of Father, especially relative to his illegal drug use, as he did not submit to random drug

screens or confirm that he was participating in drug treatment.[7] Id. at 18-21, 36-40. Father was never the primary caretaker of Child. Id. at 22. Caseworker Custer testified that it would be contrary to Child's needs and welfare for him to remain in the care of Mother or Father. Id. at 59-60. The Agency attempted, unsuccessfully, to locate a family member to provide long-term kinship care. Id. at 60.

Concerning the definition of "dependent child" at subsection 6302(1), the record contains competent evidence to support the Orphans' Court's determination that Child is without proper parental care or control, and that the conduct of Father regarding his drug history and inability to care for Child places the health, safety or welfare of Child at risk.

Concerning the definition of "dependent child" at subsection 6302(10), there is competent evidence in the record to support the Orphans' Court's determination that Child was born to parents whose parental rights with regard to three other children have been involuntarily terminated under 23 Pa.C.S.A. § 2511 (relating to grounds for involuntary termination) within three years immediately preceding the date of birth of Child, and the conduct of the parents poses a risk to the health, safety or welfare of Child.

As to Father's third issue, challenging the Orphans' Court's failure to support its Orders with findings of fact, he has waived this issue by failing to

---

[7] Father had a drug screen on October 2, 2017, which was negative. See N.T., 11/2/17, at 36, 47. Caseworker Robinette was unable to contact Father after this date. Id. at 38.

set forth any legal authority that would require the court to have entered into a discussion on the record of its factual findings. See In re W.H., 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); see also Pa.R.A.P. 2119(a).

With regard to Father's fourth and final issue, the record contains competent evidence to support the Orphans' Court's determination that aggravated circumstances exist under section 6302(5), as (1) the court did not err in adjudicating Child dependent; and (2) it is undisputed that Father's parental rights to his three other children were involuntarily terminated in 2015.[8] Moreover, the record belies Father's claim that the Agency did not make a good faith effort to avoid placing Child with a non-parent. See Father's Brief at 23. The record reveals that Father was not a potential placement resource for Child, as Father did not sufficiently communicate with the Agency or make himself available for evaluation.

Accordingly, as none of Father's claims of error entitle him to relief, we affirm the Dependency Order and the Aggravated Circumstances Order.

Orders affirmed.

_____

[8] See Father's Brief at 13 (wherein Father concedes that he had his "parental rights to different, other children terminated within three [] years immediately prior to the birth of [] [C]hild.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  5/25/2018