J-S66017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.D., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 152 EDA 2018 |

Appeal from the Order Entered December 13, 2017
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s):  CP-51-DP-0003160-2017
FID: 51-FN-002843-2017

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J.                    **FILED NOVEMBER 08, 2018**

R.L. ("Mother") appeals from the order entered December 13, 2017, adjudicating as dependent her son, Z.D., Jr. ("Child"),[1] pursuant to § 6302 of the Juvenile Act, 42 Pa.C.S.A. §§ 6301, et seq. We affirm.

On November 13, 2017, the Philadelphia Department of Human Services ("DHS") received a general protective services report. The report averred that on November 11, 2017, Child was admitted to St. Christopher's Hospital for Children's intensive care unit in severe respiratory distress. The day after his admission, doctors sought Mother's permission to intubate Child. Mother refused, informing the doctors that she did not want Child intubated until she returned to the hospital. Medical necessity demanded the doctors ignore Mother's preference and they intubated Child. Mother returned to the hospital

_____

[1] Child was born in December 2005. His father, Z.D., Sr., is deceased.

that afternoon, left, and returned once more in the evening—intoxicated and irate. Police officers ultimately escorted Mother from the hospital.

The general protective services report also averred that DHS contacted Child's paternal aunt, F.R. She stated that on the day of Child's hospital admission, Child informed Mother that he was not feeling well. Mother replied that Child would be fine. Child then called F.R. about the situation; F.R. then called Mother and told her that she needed to take Child to the hospital and if she did not, F.R. would take him. At that time, Mother took Child to the hospital and left him there. DHS then spoke with Mother, who stated she was not intoxicated, but did not have an explanation for leaving the hospital.

Later that month, DHS obtained an order for protective custody ("OPC") of Child. DHS placed Child with F.R., where he currently remains. On December 1, 2017, the court held a shelter care hearing, lifted the OPC, and ordered Child's temporary commitment to stand. A week later, DHS filed a dependency petition, averring that Child was without proper parental care or control.

On December 13, 2017, the court convened an adjudicatory hearing. Catherine White, a DHS caseworker, testified for DHS. Mother, represented by counsel, testified on her own behalf. Ms. White testified that Child had told Mother he was not feeling well and Mother stated that he would be fine. Child contacted his aunt, who told Mother that she needed to take Child to the hospital. Child was admitted to the intensive care unit in respiratory distress and doctors, unable to obtain Mother's permission to intubate Child, were

forced to make that decision without her consent. Mother arrived at the hospital intoxicated and had to be escorted out by police officers. Mother informed Ms. White that she was not intoxicated and had only had two drinks. When asked why she was not at the hospital, Mother claimed that she was helping F.R. with car trouble, and that her phone died.[2]

Upon visiting Mother, who was living at her own father's house, Ms. White found Child's sleeping quarters were freezing, although gas and electric utilities were working. At the time of his placement, Child was in seventh grade and doing well in school, with no behavioral or attendance issues. Mother was engaged in mental health treatment.

Mother testified that she asked doctors not to intubate Child without her present because her mother had passed away during a procedure. She stated she was escorted from the hospital because she refused to leave her son's side, but claimed that she was not intoxicated and had had only two drinks. Mother stated she was not transient, but had been staying with her grandmother while her room at her father's house was under construction; nevertheless, she claimed the home was appropriate and that she had given Child a space heater and plastic coverings for the window. Mother attends Pan American for mental health services. Mother stated that Child was fragile physically and had suffered from asthma for his entire life, but admitted she had not taken him to a primary care doctor in over five years.

---

[2] It appears, from the testimony, that Mother had already told doctors not to intubate Child without her presence.

At the conclusion of the hearing, the court adjudicated Child dependent. Mother filed a timely notice of appeal along with a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother claims that DHS did not prove by clear and convincing evidence that Child was dependent. Essentially, she argues that DHS did not present sufficient evidence that Mother's conduct placed the health, safety, or welfare of Child at risk. In support of this contention, she avers that the hospital was able to contact her; that she takes Child to a specialist for his asthma; and that the housing she has provided for Child is safe and appropriate.

> The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. We review for abuse of discretion[.]

*In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015) (quotation marks and citation omitted).

Section 6302 of the Juvenile Act defines a "dependent child" as:

[a] child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

This Court clarified the definition of "dependent child," as

- 4 -

whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

*In re G., T.*, 845 A.2d 870, 872 (Pa. Super. 2004) (internal quotation marks and citations omitted). *See also In re J.C.*, 5 A.3d 284, 289 (Pa. Super. 2010). "The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re G., T.*, 845 A.2d at 872 (citation omitted).

This Court has explained that

a court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*In re D.A.*, 801 A.2d 614, 617 (Pa. Super. 2002) (*en banc*).

Here, DHS proved by clear and convincing evidence that Child was without proper parental care or control. Mother does not dispute the facts, as entered into evidence. Instead, she argues they should be interpreted differently. Regardless, the record reflects that Child was severely asthmatic, and that Mother did not take him to a primary care physician for at least five years.

Child's condition had deteriorated to the point that he was admitted to St. Christopher's intensive care unit in respiratory distress. Mother, at first, refused to take him to the hospital and only did so after F.R. told her to take him. After leaving Child in the care of doctors, she refused to give permission for doctors to perform necessary medical procedures without her presence, instead choosing to help F.R. with car troubles. Mother's continued absence forced doctors to act without her. Mother arrived at the hospital, intoxicated and irate, and had to be physically removed from the hospital.

Although Mother argues that the hospital was able to contact her, she did not give permission for necessary treatments and, indeed, does not seem to appreciate how severely ill Child was. Additionally, Mother does not deny that she was drinking, but disputes only that she was intoxicated.

Additionally, Mother's housing remains a concern. The record reflects that Mother and Child are transient, at times living with Mother's father in a house still under construction, at other times living with other family members. Child's sleeping quarters in maternal grandfather's house are neither safe nor appropriate, as they are "freezing" in winter.

Accordingly, between Mother's medical neglect and the inappropriate living quarters, the record reflects that Child is currently without proper parental care or control, and that Mother's lack of understanding of the situation that led to Child's placement means that such care and control are

not immediately available. Thus, the court's adjudication of dependency was supported by clear and convincing evidence.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/18