J-A24012-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE INTEREST OF: P.L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 535 WDA 2020 |

Appeal from the Order Entered April 15, 2020
In the Court of Common Pleas of Beaver County Juvenile Division at
No(s): CP-04-DP-0000014-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: MK. L., | : | IN THE SUPERIOR COURT OF |
| MINOR | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: D.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 536 WDA 2020 |

Appeal from the Order Entered April 15, 2020
In the Court of Common Pleas of Beaver County Juvenile Division at
No(s): CP-04-DP-0000013-2020

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                 FILED OCTOBER 15, 2020

D.L. ("Mother") appeals from the orders of disposition, entered on April 15, 2020, in which the trial court adjudicated dependent her two children, P.L. (born in February of 2020) and MK.L. (born in June of 2016) (collectively "Children").  We affirm.

The juvenile court summarized the facts and procedural history of this case as follows:

On March 16, 2020, Beaver County Children and Youth Services ("BCCYS" [or "Agency"]) filed [p]etitions for the [a]djudication of [d]ependency for the minor children, MK.L., age 3 years, and P.L., age 2 months (collectively, "Children") under 42 Pa.C.S.[] § 6302(1)[,] alleging that [] Children were without proper care and control. A [s]helter [c]are [h]earing for each child was held on March 17, 2020. That [s]helter [c]are [h]earing was held after [C]hildren were removed from the care of … [M]other and placed in the care of a family and [a] non-family kinship caregiver by [e]mergency [o]rder. The parties agreed to schedule the [a]djudication [h]earings to a date beyond ten days of the [s]helter [c]are hearing to accommodate [M]other's request due to her admission into an inpatient drug and alcohol treatment facility. The [a]djudication [h]earings for MK.L. and P.L. were held simultaneously, on April 13, 2020. BCCYS's [p]etitions also requested the continued placement of [] Children, who are the subject of this appeal, MK.L. and P.L., outside the home of [Mother].

BCCYS provided notice to the biological [M]other, D.L.; biological father of MK.L., J.B.; and biological father of P.L., Q.S. Notice of the [p]etitions for the [a]djudication of [d]ependency hearings for each Child was sent to their respective biological father's last known address that was available to BCCYS at the time of filing the [p]etitions for the [a]djudication of [d]ependency. BCCYS also made phone contact with J.B., MK.L.'s biological father. J.B. … advised BCCYS that he would not participate in the hearing and declined to acknowledge MK.L. as his biological child. The respective biological fathers for each child have not been involved in the lives of either of the Children.

The following parties participated in the [h]earing via telephone pursuant to the [c]ourt's procedure at the time due to the restrictions on in[-]person court hearings due to the COVID-19 pandemic: biological [M]other, D.L.; Attorney Nicole Tesla, [c]ounsel for biological [M]other; Attorney Dana Kwidis, [c]ounsel for BCCYS; and Attorney Tiffany York, Guardian Ad Litem ("GAL") for both Children.

Neither Child's biological father participated in the hearing and the [a]djudication [h]earing was held in their absence after a finding was made that each Father had notice of the [h]earing.

After a full hearing on the merits, this [c]ourt found that there was clear and convincing evidence to adjudicate the minors as dependent children and entered decrees to that effect on April 15, 2020. Findings of fact were made on the record at [the] time of the [a]djudication [h]earing and additional findings of fact in support of the [a]djudication of [d]ependency were included in the written [a]djudication and [d]isposition [o]rder of April 15, 2020.

At the [h]earing, BCCYS offered the testimony of BCCYS protective care caseworker, Sue Willy[,] and clinical therapist, Michael Goodwin. Mother testified at the [a]djudication [h]earing. Mother also offered the testimony of her aunt, [N.T.,] and[] Mother's current treating therapist, Joshua Curry.

The gist of the allegation against Mother is that BCCYS became involved with the family at the time MK.L. was born. At the time of his birth, MK.L. was born premature at just thirty-three (33) weeks gestation and tested positive for [m]arijuana. At that time, BCCYS opened a case with the family to provide general protective services and implemented Project Star Intensive services to assist Mother with attending appointments related to drug and alcohol treatment, WIC and housing. Mother was initially cooperative with BCCYS. She completed a drug and alcohol assessment, but was inconsistent with the recommended treatment for drug and alcohol and mental health. Thereafter, Mother gave birth to two (2) additional children that are not the subject of the instant action. Both of those children were born prematurely, tested positive for drugs at the time of their births, and required extended hospital stays following their respective births. Both of those children do not currently reside with Mother.

Then on February 22, 2020, Mother gave birth to P.L., a few weeks premature.[1] P.L. tested positive for cocaine and marijuana at the time of his birth and required an extended hospital stay following his birth due to issues of bradycardia and some periods of apnea.

By the time that [M]other gave birth to P.L. [in] February [] 2020, the Agency had been involved with [M]other and her family on an ongoing basis for three and one-half (3½) years. In the

_____

[1] P.L. is Mother's eighth child. The six children, other than MK.L. and P.L., are not subject to this proceeding.

months preceding the filing of the [d]ependency petitions, the Agency, through caseworker Willy, intensified the efforts to find housing and get drug and alcohol treatment for [M]other. In January, 2020, the Agency made arrangements to have [] Mother interview with the Harmony House, a local facility that provides housing for recovering addicts while allowing the children to reside with the parents at the facility. At the interview for Harmony House, Mother self-admitted to recent use of cocaine and she was thus disqualified from admission into Harmony House. [] [M]other's use of cocaine, as admitted by her at the Harmony House interview, occurred while she was pregnant with P.L.

The Agency also unsuccessfully attempted to get housing for Mother with Beaver County Housing Authority and another Beaver County resource, Cornerstone. These efforts were unsuccessful. At the time of the [a]djudication hearing, Mother was residing at the home of her aunt, [N.T.], in McKees Rocks. [N.T.'s] children also reside in that home and a sister of [] [M]other also resides at that home. [] Mother's sister[,] who resides at the McKees Rocks home with Mother[,] is raising another biological child of [] Mother [pursuant to] an informal arrangement.

After P.L. was born, the Agency and Mother were working on a plan to have [M]other admitted to an inpatient drug and alcohol treatment facility. Eventually, [M]other settled on FamilyLinks, an inpatient facility that would have eventually allowed [] [C]hildren to reside at that facility with Mother. On March 20, 2020, Mother was evaluated and admitted into FamilyLinks, a four (4) to six (6) month inpatient treatment program to address her mental health and drug and alcohol treatment. She left that facility against medical advice sixteen (16) days later, on April 5, 2020. Even though FamilyLinks offered the possibility of stable housing in a setting [where] [M]other could get the treatment to address her drug addiction[,] which resulted in her last four children being born with drugs in their system, Mother left the facility to return to an unstable housing situation from where she could continue her drug use.

BCCYS throughout their involvement with the family has continuously attempted to get Mother to follow through with mental health and drug and alcohol treatment. Throughout the time BCCYS has been involved with the family, Mother's housing situation has been inconsistent at best. Mother has been evicted from multiple apartments, has moved in and out of residences of

family members and friends, and has even experienced periods of homelessness. Mother is currently in active addiction, as she has tested positive for drugs or admitted that she would test positive for drugs on at least four (4) occasions since January of 2020. Mother is also a victim of domestic abuse by the father of one [of] her other children.

Mother's drug use has also impeded her efforts to start and engage in mental health treatment. She is required to undergo a drug and alcohol evaluation for probation that she is currently serving in Beaver County and only the involvement of the BCCYS caseworker in arranging an evaluation may avoid a probation violation for failure to comply with the mental health directives. Mother conceded that she is diagnosed with bipolar disorder and personality disorder. Yet, Mother specifically testified that she still was not addressing her mental health needs during the early months of 2020. Further, Mother, against medical advice, once again turned her back on mental health treatment that she admitted to needing by leaving the course of treatment that she started at FamilyLinks on March 20, 2020.

Trial Court Opinion (TCO), 6/1/20, at 1-6.

In addition to this extensive discussion of the facts and procedural history of this matter, the court also included in its opinion the findings and conclusions it reached and stated on the record at the end of the April 13, 2020 hearing. The court further provided a statement of additional findings it provided in its adjudication order, dated April 15, 2020. See TCO at 7-10. These findings include the court's credibility determination. Namely, it stated that Sue Willy, the Agency's caseworker, was credible, basing this on the more than three-year relationship Ms. Willy had with Mother. However, the court did not find the testimony of Mother or her aunt, N.T., to be credible, i.e., the court did not believe that Mother was not actively using drugs. The court also noted that due to the Covid-19 pandemic, the hearing took place by telephone,

therefore, preventing the court from observing Mother at the time she testified. Additionally, the court stated that "[t]he level of care assessment determination of Joshua John Curry[, Mother's treating therapist,] is not accepted as credible and that part of his testimony is not found to be credible." TCO at 9 (#5). Thus, on April 15, 2020, the disposition orders were issued by the court that concluded that Children were dependent.

Mother filed timely notices of appeal and concise statements of errors complained of on appeal. She raises the following one issue for our review:

> Whether the [t]rial [c]ourt erred in adjudicating the minor children dependent when there was insufficient evidence presented in support of a finding that the minor children were without proper care and control, subsistence, education as required by law, or other care or control necessary for [their] physical mental or emotional health, or morals[?]

Mother's brief at 6.

The arguments Mother presents in her brief are essentially challenges to the sufficiency of the evidence to support the trial court's determinations. In particular, Mother asserts that the trial court "utilized its observations and not facts presented as evidence...." Id. at 17. Thus, she complains that the court erred in finding clear and convincing evidence that Children were without proper care and control. Id. at 19. Specifically, with regard to Mr. Curry's testimony, Mother contends that his testimony was credible because he has five board certifications in Pennsylvania, and that he stated that despite her leaving inpatient treatment, she could participate as an outpatient and was in compliance with her treatment. Mother further asserted that she had stable

- 6 -

housing, having lived at her present residence since January of 2020. Mother also mentions that she has contact with her six other children and that no protective order is in place relating to those children. She also complains that the Agency's testimony was contradictory, specifically pointing out that the testimony by the FamilyLink's counselor was not credible because that person had spent little time in her presence.

The Pennsylvania Supreme Court has set forth our standard of review in a dependency case as follows.

> "[T]he standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." In re R.J.T., 608 Pa. 9, [27], 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

In Interest of: L.Z., A Minor Child, 111 A.3d 1164, 1174 (Pa. 2015).

Section 6302 of the Juvenile Act defines a "dependent child" as [a] child who:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.[] § 6302.

In In re G., T., 845 A.2d 870 (Pa. Super. 2004), this Court clarified the definition of "dependent child" further:

> The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

Id. at 872 (internal quotations and citations omitted); see also In re J.C., 5 A.3d 284, 289 (Pa. Super. 2010). Additionally, we note that "[t]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." G., T., 845 A.2d at 872.

With regard to a dependent child, in In re D.A., 801 A.2d 614 (Pa. Super. 2002) (en banc), this Court explained:

> [A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

Id. at 617.

The trial court here found clear and convincing evidence that the Agency had met its burden of proof. In response to Mother's allegations of error, the trial court stated:

> In the instant case, the [c]ourt found clear and convincing evidence was presented that [] Children were without proper parental care and that proper parental care was not immediately available for either child. [] Children's respective Fathers refused to participate in the dependency proceedings or provide any level of care for their respective Child. Mother was found to be still in

- 8 -

active addiction at the time of the [d]ependency [h]earing and, by her conduct in continuing to use drugs through four recent pregnancies and the early days of life of P.L., refused to acknowledge the necessity and importance of maintaining her sobriety.

Mother's housing situation at the time of the hearing was not stable and has been exceedingly inconsistent over the course of time in which BCCYS has been involved with the [f]amily. At the time of the [h]earing, Mother was not on the lease at the house in which she indicated to the [c]ourt was her current place of residence. The house in which she was residing at the time of the [h]earing was a house that she has a history of frequently moving in and out of and where there is active drug use in the home.

Furthermore, Mother tested positive for illegal substances at the time of birth of both Children at issue in the instant action as well as at the time of the birth of two (2) other children not the subject of this instant action. All four (4) of the most recent children born of Mother tested positive for illegal substances at the time of their respective births, were born prematurely, and required extensive medical treatment following their respective births. The most recent of which was at the birth of P.L. on February [] 2020.

The testimony provided by Mother was not credible and was highly inconsistent throughout. Mother presented testimony of three (3) witnesses during the hearing. Mother's current outpatient drug and alcohol therapist, Joshua John Curry, testified regarding his interactions with Mother and the treatment h[e] is providing. Mr. Curry at the time of the hearing had been treating Mother for ten (10) days. Mr. Curry's initial interaction with Mother occurred during the time when she was a patient at FamilyLinks and continued after she left that facility against medical advice. At the time of the [h]earing, Mr. Curry had met with Mother for a total of nine (9) hours over that time period. Mr. Curry's first interaction with Mother occurred during a group therapy session at the inpatient facility. Following that group therapy session at the inpatient facility, Mr. Curry again met with Mother on April 8, 2020[,] and performed his own independent reevaluation of Mother. Mr. Curry's opinion was that Mother was in need of outpatient care as opposed to the inpatient care recommended by the intake specialist at FamilyLinks of March 20,

2020. Mr. Curry determined that Mother needed outpatient care with weekly sessions and that he could provide the level of care necessary. Mr. Curry indicated that the information used to make this determination of the level of care necessary for Mother was based on Mother self-reporting her past drug use, personal history and birth of her most recent child, P.L.[,] with drugs in his system. Mother did not report to Mr. Curry that she had given birth to four (4) children who tested positive for drugs at birth. Mr. Curry acknowledged there was indeed a possibility that Mother's responses to the assessment were not truthful. Mother was never drug tested by Mr. Curry to determine if she was in fact abstaining from drug use. Mr. Curry relied on Mother's reports to him that she was abstaining from drug use. The [c]ourt found the testimony of Mr. Curry with regard to his assessment of Mother wherein he determined Mother's necessary level of care to be not credible.

Mother also presented the testimony of [N.T.], [M]other's aunt. [N.T.] currently resides with Mother in McKees Rocks, Pennsylvania[,] in a four-bedroom townhome that is rented by [N.T.] Mother is not currently on the lease at that residence. There are currently three (3) adults, [N.T.], Mother's sister, [D.L.], and Mother, and three (3) children, not including the children at issue in this action, that reside in that residence. Mother would share a room with the children if they were to reside there with Mother. [N.T.] testified that Mother was residing at her residence during the time period of January of 2020 through March of 2020, specifically the time period in which Mother tested positive for drugs or admitted to using drugs. When asked, [N.T.] denied knowledge that Mother was using drugs in the home during that time period. The [c]ourt found that testimony of [N.T.] to be incredible.

Mother testified at the hearing. During Mother's testimony[,] she stated that she resides with [N.T.], with Mother's sister, and with three other children. Mother stated that she has full custody of all her children; a fact that was refuted by caseworker Willy whose testimony was found to be credible. Mother indicated to the [c]ourt that she intended to move out of the McKees Rocks residence into her own residence through the Beaver County Housing Authority in June, so long as she pays the Housing Authority the outstanding balance owing on her account. This [c]ourt found Mother's responses to questions asked on direct and cross-examination to be unresponsive at times and that her

demeanor was unstable and incoherent. Mother's testimony that she turned over two of her other children to other adults because those adults could not have children was concerning to the [c]ourt. The [c]ourt determined that Mother's testimony was not credible, in particular, as it related to her continued drug use and her drug activity and use at the home of [N.T.]

In this case, the proof of dependency was found by the [c]ourt by clear and convincing evidence. Protective [c]aseworker Sue Willy has been involved with the family for the past three and one-half (3½) years. Ms. Willy has extensive personal knowledge of the family dynamics and the history of the case because of her close involvement with the family over that time period. Although[] the family's involvement with the Agency began prior to Ms. Willy['s] becoming involved, Ms. Willy was familiar with the case history from the prior caseworker.

Ms. Willy was the [p]rotective [c]are [c]aseworker at the time of the current allegation that gave rise to filing the [p]etitions for [d]ependency. Ms. Willy's testimony was found to be credible by the [c]ourt. Ms. Willy testified that she has smelled marijuana at the residence of Mother [] during visits and that she is familiar with the smell of marijuana due to her prior employment with Gateway Rehab. Furthermore, Mother admitted that she still smokes marijuana. Ms. Willy testified that Mother's housing situation has been "pretty inconsistent" and that Mother has even been homeless on occasions.

* * *

Mother's longstanding goals have been to address issues in housing, mental health and drug and alcohol abuse. Caseworker Willy stated that Mother failed to comply with these concise objectives over the last three years, and in particular, over the last three months leading to the filing of the [d]ependency [p]etitions. Mother has failed to engage in or complete drug and alcohol treatment; caseworker Willy testified that Mother failed to complete housing service opportunities through Harmony House, Cornerstone, FamilyLinks and the Beaver County Housing Authority. Mother's current active drug use occurs in the home where she currently stays and her drug use while pregnant with P.L. occurred while she resided at the home of [N.T.] P.L. was the last of four recent children born to Mother that was born with drugs, including marijuana and cocaine, in their systems. Mother

continues to consistently test positive for continued drug use and that drug use leads to unstable housing for the children and being involved with other adult caregivers who are enabling of and complicit with Mother's drug use life style. Mother's drug addictive life style has placed her in a position where she and [] [C]hildren are exposed to domestic violence at least by the Father of one of her other Children. Mother acknowledges that she needs mental health treatment but, by her own admission, she is non-compliant in that regard.

Finally, at the time of the [a]djudication hearing[,] [] MK.L. was three years old and P .L. was only in his second month of life. [] [C]hildren are vulnerable, incapable of self-protecting and are not safe with Mother in her current life style which is dominated by drug use, untreated mental health issues, unstable housing, and drug enabling adult contacts. Four weeks prior to the hearing[,] Mother tested positive for drug use. Four months prior to the hearing[,] she admitted to using cocaine when she was pregnant with P.L., her son who was to be born just over one month later. She used drugs during her pregnancy even after the three most recent children born to her, including ML.K., were born with drugs in their systems and related birth complications. She used drugs immediately after the birth of P.L. even though her expectation was to have the child, in his initial days of life, in her care and custody. Mother is presently incapable of understanding that her ability to keep [] [C]hildren safe in her care is compromised by her continued drug use and the periods of decompensation that exist because of her untreated mental health condition.

TCO at 12-17, 18-19.[2]

We agree with the trial court's determination. With reliance on the law set forth above and a review of the record in this case, we conclude that the trial court did not abuse its discretion in adjudicating Children dependent and

_____

[2] Because Mother did not include any arguments relating to the testimony of one of the Agency's witnesses, Michael Goodwin, a clinical therapist who treated Mother while she was in the inpatient program at FamilyLinks, this Court has not included that portion of the trial court's opinion that discussed that testimony.

placing them in the custody of the Agency. The trial court's credibility determinations and findings provide the basis for its reasoning underlying its conclusions as to the dependency orders. Moreover, the trial court's findings are supported by the testimony and evidence presented at the hearing. Additionally, Mother's arguments are generally an attack on the trial court's credibility determinations and she disregards the evidence before the court that contradicts her position regarding dependency. See R.J.T., 9 A.3d at 1190 (stating that an appellate court is required to accept the findings of fact and credibility determination of the trial court if they are supported by the record). Accordingly, we affirm the orders adjudicating Children dependent.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2020