J-S01028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: L.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.S., BIOLOGICAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1136 MDA 2020 |

Appeal from the Dispositional Order Entered August 7, 2020
In the Court of Common Pleas of Luzerne County Juvenile Division at
No(s): CP-40-DP-0000332-2020

BEFORE: LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED FEBRUARY 19, 2021**

M.S. (Mother) appeals from the order entered in the Luzerne County
Court of Common Pleas, which: (1) adjudicated her minor, male child, L.S.
(Child) (born in July of 2020), dependent under the Juvenile Act;[1] and (2)
placed Child in the care and legal and physical custody of Luzerne County
Children and Youth Services (CYS). Mother avers the trial court improperly

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 6301-6375. **See** 42 Pa.C.S. §§ 6302 (definition of "dependent child"), 6341(a) (adjudication of dependency), 6351 (disposition of dependent child).

We note Mother refused to disclose to CYS the identity of Child's father. N.T., 8/3/20, at 4-5. Thus, no father, known or unknown, has participated in this case. Furthermore, while CYS has filed a brief in this Court, Child's guardian *ad litem* has advised this Court, by letter, that he will not file an appellate brief.

shifted the burden of proof to her, and erred in basing its adjudication solely on her mental health history.  We affirm.

The trial court set forth the factual background and procedural history of this appeal as follows:

> On or around July 21, 2020, [when Child was approximately three days old,] the court acted upon a temporary shelter care petition of [CYS] and transferred temporary legal and physical custody of [Child to CYS.  CYS'[ petition] alleged [CYS] learned that Mother had given birth to [Child] and that Mother had a significant history of mental health issues.  The Petition further stated that on June 1, 2020, Mother was involuntarily committed for treatment at a local hospital's psychiatric ward due to threats to harm herself.  Mother also had previously received three (3) years of inpatient care at Clarks Summit State Hospital in connection with a criminal matter.  [CYS] further alleged that [Child] is in need of protection and the family is in need of services.
>
> On or around July 24, 2020, a Shelter Care hearing was held and the Court finalized the Shelter care and confirmed temporary legal and physical custody in [CYS].  . . .

Trial Ct. Op., 10/5/20, at 1-2 (citation to record omitted).

On July 22, 2020, CYS filed a petition to adjudicate Child dependent, pursuant to 42 Pa.C.S. § 6302(1), and to place Child in the care and custody of CYS, 42 Pa.C.S. §§ 6341, 6351.

On August 3, 2020, a hearing officer conducted a hearing on the petition *via* telephonic communication.  William Urbanski, Esquire, represented CYS and Joseph Borlan, Esquire, represented Mother.  Todd Johns, Esquire, was the guardian *ad litem* (GAL) for Child, who was only two weeks old and in foster care in Hazleton, Pennsylvania.  N.T. at 24.  CYS presented the

testimony of CYS Caseworker Anthony Bellizia; and Jacquelene Marrero, a drug/alcohol and mental health professional at Pathways to Recovery in Hazleton, who treated Mother for both drug/alcohol and mental health issues. *See* N.T., 8/3/20, at 3-4; 12-13. Mother testified on her own behalf.

The trial court made the following findings of fact from the testimony of Caseworker Bellizia:

> [T]here was a prior [CYS case] with Mother regarding her two older children[. They were adjudicated dependent] in 2016 . . . as a result of Mother being involved in an armed robbery . . . with her paramour. [CYS] discovered that the children were being physically abused by Mother's paramour. Thus, the children, at the time, were placed with the maternal grandmother. Mother became incarcerated and transferred to Clarks Summit State Hospital in Pennsylvania. After a certain period of time, in 2019, Mother voluntarily relinquished her parental rights with respect to her older children. [N.T. at 5-8.]

Trial Ct. Op. at 4.

> [On June 1, 2020, when] Mother was seven . . . months pregnant with [Child], she attempted to take her life by cutting her wrist. As a result[,] Mother was . . . hospitalized for approximately six . . . days. [N.T. at 3-4.].
>
> Mr. Bellizia testified that [CYS] learned of the birth of a child at Lehigh Valley Hospital in Hazleton, Pennsylvania. When [Child] was born, the shelter care and dependency actions were filed. [CYS was] concerned as to Mother's ability to care for the child due to Mother's mental state relating to the incident [one month earlier] wherein Mother cut her wrist while she was seven . . . months pregnant with [Child]. *Id.* at 3-4.

*        *        *

> Mr. Bellizia further testified that at the time of the hearing, Mother was receiving mental health services for major depressive disorder and severe recurrent episode anxious distress [sic] through Pathways to Recovery in Hazleton, Pennsylvania. Mr.

Bellizia indicated that Mother has weekly sessions with a mental health therapist in addition to medication management appointments. *Id.* at 8.

Trial Ct. Op. at 4-5.

The trial court also considered the testimony of Ms. Marrero:

Ms. Jacquelene Marrero testified that she is a drug and alcohol and mental health professional at Pathways to Recovery. Ms. Marrero indicated Mother began drug and alcohol treatment on July 23, 2019 and completed the treatment in May 2020. Mother also began her mental health treatment in April 2020 and was still undergoing mental health treatment at the time of the hearing in August 2020.

Ms. Marrero testified that she was aware of the June incident of Mother's self-harming behavior. However, Ms. Marrero did not have an ongoing concern for Mother in the course of Mother's treatment. Ms. Marrero's only concern was to ensure that Mother continued taking her mental health medications and remained stabilized. Despite Ms. Marrero stating that she did not believe that Mother posed any harm upon herself, Ms. Marrero indicated that Mother should be required to undergo ongoing mental health treatment. [N.T.] at 8. Ms. Marrero . . . was not able to indicate whether Mother would pose a danger to the minor child while the child is in her care. Ms. Marrero explained that she did not observe Mother's interaction with her child. Her assessment was only based upon seeing Mother on an individual basis. *Id.* at 16. Thus, although Ms. Marrero had no concern for Mother hurting herself, Ms. Marrero was not able to testify that she had no concerns for the child. The court did take Ms. Marrero's testimony into account. Notably, Ms. Marrero was not able to give any assurance to the court that Mother did not pose a threat of harm to the minor child.

Trial Ct. Op. at 5-6.

Finally, we note Mother testified; she agreed that Mr. Bellizia's and Ms. Marrero's testimony was accurate. N.T. at 18. Mother further stated, however, that while she was granted daily video chats with Child, she has not had any, and that she has not received, as promised, "the Foster Mother's

information." *Id.* Mother also testified that her in-person visits with Child were scheduled at the same time as her appointments at Pathway. *Id.* at 19.

As stated above, at the time of the hearing, Child was in foster care in Hazleton, Pennsylvania, which the hearing officer found was the least restrictive placement. N.T. at 24. The hearing officer found, by clear and convincing evidence, that: Child was a dependent child; that it would be contrary to Child's health, safety and welfare to remain in the home; Child should be placed in the legal and physical custody of CYS; and that CYS had made reasonable efforts to prevent the removal of Child from Mother's care and custody. *Id.* at 23-24. The hearing officer would thus recommend to the trial court that Child be adjudicated dependent. *Id.* at 24.

In an order dated August 3rd, and entered on August 7, 2020, the trial court agreed with, and confirmed, the hearing officer's findings and recommendations. On September 4th, Mother filed a timely notice of appeal along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises the following issue:

Did the lower Court abuse its discretion and err as a matter of law in placing the burden of proof in this dependency action upon [M]other and in finding, contrary to the testimony of [M]other's treating mental health professional, that there was clear and convincing evidence that [C]hild is dependent?

Mother's Brief, at 5.[2]

Mother argues the evidence did not satisfy the "clear and convincing" standard, and furthermore the trial court erred in effectively placing the burden of proof on her, rather than CYS. Mother's Brief at 8, 11, 16. In support, Mother avers the following: the trial court erred in adjudicating Child dependent on grounds that her home was unsafe because of her past mental health treatment. Ms. Marrero's professional testimony at the hearing was that Mother was no longer a risk to herself, and that Mother was continuing to participate in mental health treatment as recommended by her mental health provider. Thus, Mother was not a risk to Child. Additionally, to the extent the trial court relied on evidence that she had recently been hospitalized for self-harm, this evidence alone, without more, cannot support the adjudication of Child as dependent. *Id.* at 8. The Juvenile Act requires that "the facts of each case be fully . . . explored," and "'[s]hortcuts' relying on anything other than probative and competent evidence demonstrating the present inability of the parent to properly care for her children have been uniformly, and repeatedly, rejected." *Id.* Mother concludes that the court

---

[2] We note Mother stated her issue differently in her concise statement: "[CYS] did not meet its burden of proof in disregard of a treating professional['s] undisputed professional treating opinion [sic] and the decision was contrary to the evidence." Mother's Concise Statement of Errors, 9/4/20. Nevertheless, we find she has sufficiently preserved the present issue for our review.

improperly shifted the burden of proof to her and "creat[ed] a *per se* dependency adjudication based on [her] past mental health issues." ***Id.*** at 9. After careful review, we conclude no relief is due.

We first note:

"[T]he standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." We review for abuse of discretion[.]

***In Interest of: L.Z.***, ***A Minor Child***, 111 A.3d 1164, 1174 (Pa. 2015) (citations omitted).

Section 6302 of the Juvenile Act defines a "dependent child," in part, as a child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302.

This Court clarified the procedure for determining the existence of "proper parental care or control," stating: "The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available." ***In re G., T.***, 845 A.2d 870, 872 (Pa. Super. 2004)

- 7 -

(citations omitted); *see also In re J.C.*, 5 A.3d 284, 289 (Pa. Super. 2010).

"The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *G., T.*, 845 A.2d at 872.

With regard to a dependency adjudication, this Court has explained:

> [A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*In re D.A.*, 801 A.2d 614, 617 (Pa. Super. 2002) (*en banc*) (citation omitted).

In its opinion, the trial court set forth its reasons for granting CYS' petition to the have Child adjudicated dependent. The court considered Ms. Marrero's testimony, along with Mr. Bellizia's testimony and CYS' evidence. The trial court reasoned:

> The court determined in this case that Mother was not able to provide proper parental care and control to [Child]. The Court further determined that there was no family or resource with which to have the child placed. Thus, the court found [Child] to be dependent pursuant to the Juvenile Act and determined that [CYS] proved by clear and convincing evidence that [Child] was dependent[,] as Mother did not provide proper care and control to the child.
>
> Credible testimony at the dependency hearing was presented to show, by clear and convincing evidence, that Mother is incapable of presently providing proper parental care or control for the minor child which is necessary for the physical and mental well-being of the child.

* * *

The Court notes that Mother began her drug and alcohol treatment on July 23, 2019 and completed treatment in May 2020. Mother also commenced mental health treatment in April 2020. Two months subsequent to the commencement of her mental health treatment and one month subsequent to Mother completing her drug or alcohol treatment, Mother cut her wrist after having an argument with the maternal grandmother. As a result of this, Mother was taken to the emergency room and remained in the hospital for six . . . days. [N.T. at 4, 13.] In considering the health and safety of the child, the pivotal question is[: W]hat if Mother acted in that manner when she had custody of [Child] alone? The Court finds that the incident with Mother cutting her wrist is fairly recent and only had occurred in June of 2020.

The court's main focus in this case is to protect the best interest of the child and to ensure the child's safety. The court finds that there has not been sufficient time for Mother to demonstrate that the child would be safe in her hands in light of the June 2020 incident. The court is not making a determination solely based upon Mother's past with her two older children. Had the incident regarding Mother cutting her wrist not occurred so recently, the court may have differently decided.

### . . . CONCLUSION

The Court notes that the [GAL], after having been present for all of the testimony and evidence, indicated on the record that he recommended dependency for [Child]. The [GAL] further believed that the Court needed to proceed with caution with . . . respect to insuring the safety of the child. The [GAL] stated that although Mother has not had any issues since she voluntarily relinquished her parental rights to her two children in 2019, Mother did not have any children during that timeframe. The [GAL] indicated that Mother was unable to meet the requirements of the Family Service Plan in order to gain custody of her two older children, resulting in Mother voluntarily relinquishing her parental rights to her two older children.

The Court further gives weight to the most recent incident of Mother's self–harm when she was seven . . . months pregnant with [Child] in June of 2020. At the time, Mother was already

supported by mental health treatment and drug and alcohol treatment.

The court finds that [CYS] demonstrated by clear and convincing evidence that [Child] should be determined to be a dependent under the Juvenile Act.

Trial Ct. Op. at 3, 6-7 (paragraph break added).

Here, the trial court considered the undisputed evidence that Mother, when seven months pregnant with Child, and while she was participating in mental health treatment, cut her wrist and had to stay in the hospital for almost a week, and that her actions placed Child's health and safety at risk shortly before his birth. At the time of the hearing, Mother was receiving mental health care treatment. Contrary to Mother's contention, Ms. Marrero did not testify or suggest that Mother does not pose a threat of harm to Child. Moreover, the trial court did not impose a *per se* rule against Mother or shift the burden of proof from CYS to her. Rather, the trial court found after reviewing all the evidence presented, that Child is without proper parental care or control necessary for his physical, mental, or emotional health, or morals. **See** 42 Pa.C.S. § 6302(1). Accordingly, the trial court did not err as a matter of law or abuse its discretion in finding Child dependent. **See G., T.**, 845 A.2d at 872. We thus affirm its dependency adjudication.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>02/19/2021</u>